UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SPECTRUM MANAGEMENT HOLDING COMPANY, LLC,<br><br>       Plaintiff,<br>v.<br><br>IV MEDIA, LLC,<br><br>       Defendant. | Civil Action No. 1:25-cv-2905<br><br>**COMPLAINT** |

Plaintiff Spectrum Management Holding Company, LLC (**Charter** or **Spectrum**) brings this Complaint against Defendant IV Media, LLC d/b/a ShopHQ (**ShopHQ**) for Breach of Contract (Counts I-II), Breach of the Implied Covenant of Good Faith and Fair Dealing (Count III), and Declaratory Judgment (Count IV), alleging the following:

## NATURE OF THE ACTION

1. Charter is a leading broadband connectivity company and cable operator, widely recognized by consumers as a reliable and reputable provider of communications services.

2. ShopHQ markets itself as a multi-channel interactive television network that advertises and sells a variety of proprietary, exclusive, and name-brand products to consumers via television, online, and mobile platforms.

3. More than a decade ago, ShopHQ granted Charter a non-exclusive right and license to receive, transmit, and distribute high-quality, commercial-free home shopping programming, offering a variety of consumer products and services for sale to its subscribers, twenty-four hours a day, seven days a week. In return for offering its programming to Charter subscribers, ShopHQ paid Charter monthly fees under the terms of an Affiliation Agreement, as amended (the **Agreement**).

4. At 11:59 p.m. on March 31, 2025, however, ShopHQ intentionally shut off Charter's access to the ShopHQ signal (the **Service Signal**), thereby preventing Charter from receiving and distributing ShopHQ home shopping programming to Charter subscribers.

5. This followed threats by ShopHQ to shut off the Service Signal if Charter did not accede to ShopHQ's demands for a significant reduction in the monthly programming fees it is obligated to pay to Charter under the Agreement.

6. ShopHQ also breached the duty of good faith and fair dealing implicit in the contract by unilaterally demanding lower fees and threatening to terminate the contractually agreed-to Service Signal if Charter did not agree to its demand.

7. Charter is entitled to an award of monetary damages for these and other breaches of the Agreement, including past due and future payments owed under the Agreement, and for ShopHQ's breach of the covenant of good faith and fair dealing. Charter is also entitled to a declaration that the Agreement remains in full force and effect and that ShopHQ is not excused from ongoing performance of all of its obligations under the Agreement.

## PARTIES

8. Plaintiff Spectrum Management Holding Company, LLC is a Delaware limited liability company with its principal place of business in Missouri. Spectrum Management Holding Company, LLC is an indirect subsidiary of Charter Communications, Inc., a Delaware corporation with its principal place of business in Connecticut.

9. Defendant IV Media, LLC is a Michigan limited liability company. IV Media, LLC is a subsidiary of Innovation Ventures, LLC, a Michigan limited liability company with its principal place of business in Michigan. Upon information and belief, none of the members of Innovation Ventures, LLC are citizens of Delaware, Connecticut, Missouri, or New York, the only states in which any of the various members of Spectrum Management Holding Company are

citizens.

## JURISDICTION AND VENUE

10. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1). Charter is informed and believes that the parties are all diverse and, as set forth below, the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

11. The parties are subject to personal jurisdiction in this District by virtue of their consent in the Agreement to "submit[] to the exclusive jurisdiction" of this Court for disputes related to the Agreement.

12. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because ShopHQ's termination of the Service Signal was directed to Charter subscribers in New York and because the Agreement includes a valid and enforceable forum selection clause designating this District as a venue for "[a]ny legal action brought under or in connection with the subject matter of [the] Agreement."

13. This Court has the authority to hear declaratory judgment claims under 28 U.S.C. §§ 2201, 2202.

14. The Agreement, and all legal actions brought under or in connection with the subject matter of the Agreement, are governed by New York law pursuant to a valid and enforceable choice-of-law provision in the Agreement.

## FACTUAL BACKGROUND

15. On or about January 1, 2013, assigned or predecessor entities of the parties entered into the ShopNBC Affiliation Agreement.

16. Subsequently, in Amendment No. 2 to the Agreement, effective December 18, 2018, Spectrum Management Holding Company LLC was designated as a successor party to the Agreement.

17. The parties later entered into Amendment No. 5 to the Agreement (**Amendment No. 5**), effective as of September 1, 2023, in which IV Media, LLC was assigned and assumed the Agreement in connection with the bankruptcy of ShopHQ's predecessor parent company, iMedia Brands. Amendment No. 5 also extended the term of the Agreement through 5:00 PM ET on December 31, 2025.

18. Under Sections 1 and 3 of the Agreement, ShopHQ granted Charter the non-exclusive right and license to receive the Service Signal and distribute ShopHQ programming to Charter subscribers. In return for Charter providing distribution of the Service Signal to Charter subscribers, ShopHQ paid Charter monthly fees in recognition of the ability to advertise and sell ShopHQ products and services to such Charter subscribers.

19. Section 5 of the Agreement requires ShopHQ to pay certain fees to Charter on a monthly basis: (i) for each subscriber receiving the Service Signal in New York markets; (ii) for each subscriber receiving the Service Signal in non-New York markets; (iii) for each subscriber receiving the Service Signal in high-definition format; and (iv) a penetration bonus for a threshold number of subscribers reached. These monthly fees are due thirty days from ShopHQ's receipt of an invoice from Charter.

20. The Agreement also requires ShopHQ, on its behalf and on behalf of its affiliate entities, to spend a certain minimum amount in advertising purchases from Charter on an annual basis.

21. In late January 2025, ShopHQ informed Charter it would be dropping its satellite signal feed at midnight on February 1, 2025, despite the Agreement requiring ShopHQ to transmit the feed of the Service Signal to Charter via satellite, and that it would be delivering its feed via IP delivery instead. ShopHQ also asked for a significant reduction in fees and the ability to opt out

of the Agreement on a month-to-month basis.

22. Charter sent a letter to ShopHQ dated January 27, 2025, informing ShopHQ that pulling its satellite feed and changing its signal delivery would be a material breach of the Agreement.

23. Charter did not agree to ShopHQ's request for a reduction in fees or its request to convert the Agreement's fixed expiration to be subject to a month-to-month termination right. But Charter did accommodate ShopHQ's late notice of its intent to transition to IP signal delivery, with Charter's technical teams going to great lengths in a short amount of time to avoid signal disruption and preserve uninterrupted distribution of the Service Signal for Charter subscribers.

24. ShopHQ reached out to Charter in early March 2025 to discuss the Agreement's fee structure. During a discussion with Charter on March 10, 2025, ShopHQ again demanded a significant reduction to the Agreement's contractually agreed-to fee schedule. Despite all of Charter's good faith efforts to keep the Service Signal's transmission from being disrupted as a result of the change in service delivery method, ShopHQ warned that if Charter did not also reduce its monthly fees by roughly half of the contractually obligated amount, ShopHQ would pull the Service Signal from Charter at the end of the day on March 31, 2025, leaving Charter subscribers without access to ShopHQ programming.

25. Charter formally notified ShopHQ by letter dated March 27, 2025 that it would be in material breach of the Agreement if it carried out its threat to cease delivery of the Service Signal before the Agreement's expiration date. Charter also reminded ShopHQ that it was obligated to provide the Service Signal to Charter in its entirety throughout the term of the Agreement and to continue to pay the contractually agreed-to monthly fees to Charter for the entire term of the Agreement.

26.  There is no provision in the Agreement that would allow ShopHQ to unilaterally cease delivery of the Service Signal.

27.  Charter did not accede to ShopHQ's unilateral demands to reduce the fees ShopHQ is required to pay under the Agreement, and ShopHQ followed through on its threat to terminate the Service Signal, pulling its programming from Charter subscribers at midnight on March 31, 2025.

28.  Charter remains ready, willing, and able to perform under the terms of the Agreement, including, upon ShopHQ's restoration of Service Signal delivery, distributing the Service Signal in the same manner as Charter distributed the Service Signal immediately prior to the date upon which ShopHQ ceased delivery.

<u>**COUNT I**</u>
**Breach of Contract Under New York Law**
**(Breaches of Sections 1, 3, and 5 of the Agreement, As Amended)**

29.  Charter specifically realleges and incorporates by reference each paragraph of this Complaint as if fully set forth herein.

30.  The Agreement is a contract under which Charter was owed access to the Service Signal and monthly fees in exchange for distributing ShopHQ programming to its subscribers.

31.  The Agreement is a valid and enforceable contract between the parties.

32.  Charter performed any conditions precedent and all of its obligations under the Agreement.

33.  ShopHQ materially breached the Agreement by unilaterally terminating the Service Signal and ceasing payment to Charter prior to the expiration of the Agreement, breaching Sections 1, 3, and 5 of the Agreement.

34.  ShopHQ was provided notice of its anticipated material breach and breached the Agreement anyway.

35. The breach of the Agreement by ShopHQ has caused and will continue to cause Charter to suffer substantial loss and harm.

36. ShopHQ owes past due fees to Charter in excess of nine hundred thousand dollars and further will continue to owe all fees due to Charter through the expiration of the Agreement's term as those monthly fees become due, whether or not ShopHQ is providing a signal. ShopHQ's failure to pay these amounts is a breach of the Agreement.

37. Charter is entitled to an order requiring ShopHQ to reinstate the Service Signal and damages against ShopHQ as a result of ShopHQ's breaches of the Agreement in an amount to be determined at trial, including but not limited to, past-due invoices for monthly fees, all amounts due and owing for the remainder of the Agreement's term, pre-and post-judgment interest, and any other costs and relief that this Court deems proper.

## COUNT II
### Breach of Contract Under New York Law
### (Breach of Section 5 in Amendment No. 5 to the Agreement)

38. Charter specifically realleges and incorporates by reference each paragraph of this Complaint as if fully set forth herein.

39. Amendment No. 5 is a valid and enforceable amendment to the Agreement executed by the parties.

40. Under Section 5 of Amendment No. 5, ShopHQ agreed that in each of the calendar years 2024 and 2025, ShopHQ or its affiliates would spend a certain minimum amount, net of commissions, in advertising purchases from Charter or Charter's affiliates for airing on Charter systems. Charter agreed to make such advertising inventory available to ShopHQ or its affiliates at the then-current rates generally charged by Charter for such advertising inventory.

41. Charter performed any conditions precedent and all of its obligations under

Amendment No. 5 to the Agreement, including by making available to ShopHQ its advertising inventory at the then-current rates generally charged by Charter.

42. ShopHQ breached Section 5 of Amendment No. 5 by failing to satisfy the minimum advertising spend in 2024, falling over two hundred thousand dollars short of the contractual minimum.

43. ShopHQ's breach of Section 5 of Amendment No. 5 caused Charter to suffer substantial loss and harm.

44. Charter is entitled to damages against ShopHQ as a result of ShopHQ's breach of Section 5 of Amendment No. 5 in an amount to be determined at trial, including pre-and post-judgment interest and any other costs and relief that this Court deems proper.

## COUNT III
### Breach of Implied Covenant of Good Faith and Fair Dealing
### Under New York Law

45. Charter specifically realleges and incorporates by reference each paragraph of this Complaint as if fully set forth herein.

46. Under New York law, a duty of good faith and fair dealing is implied in every contract, such that neither party shall do anything which has the effect of destroying or injuring the right of the other party to receive the fruits of the contract.

47. Charter and ShopHQ are parties to the Agreement, which is a valid and enforceable contract.

48. The Agreement implied a covenant of good faith and fair dealing by and between the parties.

49. The extortionate efforts to impose unbargained-for reductions in fees and to condition continued, already-required performance under the Agreement on such unbargained-for

reductions in fees was designed to deprive Charter of the fruits of the deal to which the parties agreed and constitutes a breach of the implied covenant of good faith and fair dealing.

50. ShopHQ's unilateral termination of the Service Signal left Charter unable to distribute ShopHQ programming to its subscribers. The termination was designed to deprive Charter of the fruits of the deal to which the parties agreed and constitutes a breach of the implied covenant of good faith and fair dealing.

51. ShopHQ's breach of the covenant of good faith and fair dealing has directly and proximately caused damage to Charter for which ShopHQ is liable in an amount to be determined at trial, including pre-and post-judgment interest and any other costs and relief that this Court deems proper.

## COUNT IV
### Declaratory Judgment Under 28 U.S.C. §§ 2201, 2202

52. Charter specifically realleges and incorporates by reference each paragraph of this Complaint as if fully set forth herein.

53. There is a substantial controversy and a live dispute between the parties having adverse legal interests of sufficient immediacy and reality to warrant the issuance of a declaratory judgment. The dispute between Charter and ShopHQ is therefore a justiciable controversy appropriate for declaratory judgment under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202.

54. Charter has fulfilled its obligations under the Agreement and is not in breach of the Agreement.

55. ShopHQ has provided notice to Charter that it will no longer perform its obligations under the Agreement, including its obligations to deliver the Service Signal to Charter and to make payments due under the Agreement

56.     A declaratory judgment that the Agreement remains in full force and effect and that no contractual provision or amendment, occurrence, or demand for unbargained-for reductions in fees excuses or terminates ShopHQ's ongoing performance of all of its obligations under the Agreement will prevent the necessity of multiple successive lawsuits to recover payments of each monthly invoice that ShopHQ fails to timely pay during the remainder of the term of the Agreement.

57.     Declaratory judgment will also prevent irreparable harm to Charter that will result each month that ShopHQ continues to refuse to deliver the Service Signal to Charter, demands unbargained-for reductions in fees to effect a unilateral modification and early termination of the Agreement, continues to fail to pay the fees owed to Charter each month during the remainder of the term of the Agreement, and fails to make the minimum advertising purchases required by the Agreement.

58.     Charter is thus entitled to entry of a judgment declaring the Agreement remains in full force and effect and that ShopHQ must perform all of its obligations under the Agreement, including its obligation to deliver the Service Signal to Charter, make timely payment of each monthly invoice through the remaining term of the Agreement, and make the minimum advertising purchases required by the Agreement.

### **REQUEST FOR RELIEF**

WHEREFORE, Charter requests a judgment as follows:

1)     As to Count I, a judgment awarding monetary damages for breaches of contract in an amount to be determined at trial, including but not limited to, past-due invoices for monthly fees and pre-and post-judgment interest and a declaration that ShopHQ is required to continue to pay monthly fees to Charter through the expiration of the Agreement;

2)       As to Count II, a judgment awarding monetary damages for breach of contract in an amount to be determined at trial, including pre-and post-judgment interest;

3)       As to Count III, a judgment awarding monetary damages for breach of the duty of good faith and fair dealing, including pre-and post-judgment interest;

4)       As to Count IV, a judgment declaring the Agreement remains in full force and effect and that no contractual provision or amendment, occurrence, or demand for unbargained-for reductions in fees excuses or terminates ShopHQ's ongoing performance of all of its obligations under the Agreement, including its obligation to deliver the Service Signal to Charter, make timely payment of each monthly invoice through the remaining term of the Agreement, and make the minimum advertising purchases required by the Agreement; and

5)       Grant such other and further relief as this Court deems just.

DATED: April 8, 2025

Respectfully submitted,

THOMPSON COBURN LLP

By: */s/ Brigitte R. Rose*
Brigitte R. Rose
488 Madison Avenue
New York, NY 10022
(212) 474-7200
brose@thompsoncoburn.com

Kristen E. Sanocki
(*Pro Hac Vice application to be filed*)
One US Bank Plaza
St. Louis, Missouri 63101
(314) 552-6000
ksanocki@thompsoncoburn.com

*Attorneys for Spectrum Management Holding Company, LLC*